## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

**CHRISTINA WILLINGHAM,** individually,
and on behalf of others similarly situated,

       Plaintiff,

vs.                              C.A. No.: _____

**CVS HEALTH CORPORATION.**, a
Delaware Corporation,

       Defendant.

---

## COLLECTIVE AND CLASS ACTION
## COMPLAINT AND RELIANCE ON JURY DEMAND

Plaintiff, CHRISTINA WILLINGHAM ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Class/Collective Action Complaint against Defendant CVS HEALTH CORPORATION ("Defendant"), and states as follows:

### INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and for common law claims of breach of contract or (in the alternative) unjust enrichment.

2. Defendant describes itself as "a leading health solutions company," "that offer[s] multiple channels to access health care locally and nationally," with a "strong community presence, tech-forward approach and unmatched engagement with more than 100 million people."[1] Among other services, Defendant provides prescription drug coverage, health insurance, and

---

[1] *See*, https://www.cvshealth.com/about.html (last visited 4.24.24).

pharmacies throughout the United States. *Id.* As of December 31, 2023, Defendant had more than 9,000 retail locations, 204 primary care medical clinics, a pharmacy benefits manager with approximately 108 million plan members all of which are serviced by more than 300,000 CVS employees. *See* 2023 Annual Report[2].

3.      At the heart of this case are remote and brick and mortar workers referred to as Application Technical Specialists ("TECH SPECIALISTS") that provide call center based technical support to CVS retail locations, vendors and their staff. These workers are trained, supervised, and otherwise managed by Defendant through its Rollout Operations Center, located in Lincoln, Rhode Island near Defendant's headquarters in Woonsocket, Rhode Island.

4.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those at issue here, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

5.      One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

6.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-

---

[2] See, https://investors.cvshealth.com/investors/financial-information/annual-reports-archive/ (last visited 4/24/24).

shift and post-shift job-related activities, must be kept." *Id.*

7.      Given the DOL's express guidance on this issue, Defendant's violations of the FLSA were clearly willful or negligent. Either Defendant did not bother to determine whether time spent loading and logging into computer systems was compensable, or Defendant knew the time was compensable but nonetheless failed to pay its TECH SPECIALISTS for this time.

8.      Moreover, recently, several circuits have confirmed the DOL's guidance on this issue that employers must pay their hourly employees for the pre-shift time they spend booting up their computers and launching software where, like here, it is "integral and indispensable" to their duties and is thus compensable under the FLSA. *Peterson v. NelNet Diversified Sols., LLC*, 15 F.4th 1033, 1041 (10th Cir. 2021) ("The preshift activities of booting up a computer and launching software are integral and indispensable to the CCRs' principal duties of servicing student loans by communicating with borrowers over the phone and by email."); *Cadena v. Customer Connexx LLC*, 51 F.4th 831, 840 (9th Cir. 2022) ("Because Appellants cannot perform their principal duties—receiving customer calls and scheduling—without a functional computer, booting up their computers at the beginning of their shifts is integral and indispensable and therefore compensable under the FLSA.")

9.      Defendant requires its TECH SPECIALISTS to routinely work a full-time schedule, plus overtime, however, Defendant does not compensate TECH SPECIALISTS for all work performed.

10.     Defendant requires its TECH SPECIALISTS to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

11.     This policy results in TECH SPECIALISTS not being paid for all time worked, including overtime.

12.     In the course of performing their job responsibilities, Defendant's TECH SPECIALISTS use computer networks, software programs, applications and a phone system.

13.     The time TECH SPECIALISTS spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the TECH SPECIALISTS' work, and they cannot perform their jobs effectively without them.

14.     Defendant's TECH SPECIALISTS all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

15.     Upon information and belief, Defendant's TECH SPECIALISTS all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

16.     Plaintiff seeks to represent in this action all current and former TECH SPECIALISTS who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

17.     Defendant knew or should have known how long it takes TECH SPECIALISTS to complete their off-the-clock work, and Defendant could have properly compensated Plaintiff and the putative Collective and Class for this work, but did not.

18.     Defendant knew or should have known that TECH SPECIALISTS, including Plaintiff, worked overtime hours for which they were not compensated.

19.     Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make her,

the Collective and Class whole for damages they suffered, and to ensure that she and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

20.     This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

21.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

22.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

23.     This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

24.      Upon information and belief, Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

25.     Defendant's TECH SPECIALISTS, including Plaintiff, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

26.     This Court has supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

27. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

28. This Court has personal jurisdiction over Defendant because it conducts business within the state of Rhode Island, maintains its headquarters in the state of Rhode Island and employs individuals within the state of Rhode Island.

29. This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Rhode Island, has established minimum contacts sufficient to confer jurisdiction over it and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

30. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant is subject to the Court's personal jurisdiction.

## PARTIES

31. Plaintiff CHRISTINA WILLINGHAM ("Plaintiff") is a Georgia resident who worked for Defendant as a remote TECH SPECIALIST in Georgia within the last three years. She also worked as a remote TECH SPECIALIST within the last two years. Specifically, from approximately December 2022 to November 2023 she held the position of TECH SPECIALIST.

32. Defendant paid Plaintiff for her services in the form of an hourly wage, for all credited hours worked, most recently at $17.00 per hour.

33. Plaintiff has signed a consent to join this collective action lawsuit, attached hereto as ***Exhibit 1***.

34.     Defendant CVS Health Corporation is a Delaware corporation with headquarters at 1 CVS Dr., Woonsocket, Rhode Island 02895.

## GENERAL ALLEGATIONS

35.     Defendant employed Plaintiff as a remote TECH SPECIALIST from Plaintiff's home office in Georgia within the last two (2) years.

36.     Defendant's TECH SPECIALISTS are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to CVS store locations, vendors and staff; (c) ensuring that every call is documented and accounted for in Defendant's system; and (d) logging out of the computer software programs and applications.

37.     TECH SPECIALISTS are primarily responsible for fielding inbound calls from CVS stores, vendors, and staff.

38.     For example, Plaintiff was employed by Defendant to assist with the installation/upgrade of GEN10 systems at CVS retail locations.

39.     Regardless of which CVS retail location the TECH SPECIALIST is working with, the responsibilities, qualifications, and method of compensation are the same.

40.     Defendant's TECH SPECIALIST jobs are hourly, non-exempt positions with rigid schedules that require TECH SPECIALISTS, including Plaintiff, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

41.     These schedules result in TECH SPECIALISTS routinely working overtime on a weekly basis.

42.     Indeed, throughout her employment with Defendant, Plaintiff was required to work

a substantial amount of unpaid time, including unpaid overtime, as part of her role as a TECH SPECIALIST.

43.     Defendant schedules its TECH SPECIALISTS to work forty (40) hours per week, requires them to be call-ready at the start of their scheduled shifts, but only pays them for time spent logged into the phone system rather than actual hours worked. In fact, Defendant directs TECH SPECIALISTS to login into the phone system "for the time [their] shift starts," which is then used to "cross-reference" what a TECH SPECIALIST "submit[s] online at the end of the week." Moreover, TECH SPECIALISTS are advised that "[t]he hours [they] report must match exactly to those hours recorded on [their] phone log" and that "[their] CVS ROC Manager will be approving [their] time based on what [their] login routine showcases at the end of [their] work week."

44.     Even more egregious is Defendant's "Late Log-In Policy" which instructs TECH SPECIALISTS as follows: "Keep in mind that if you are even just one minute late past the 3 minute grace period or if you log out a minute early at the end of your shift, **it's an automatic 15 minute deduction from your paycheck**."

45.     Defendant's policy of deducting pay for late log-ins often results in the unlawful deprivation of overtime pay from TECH SPECIALISTS.

46.     Defendant knew or should have known that off-the-clock work was regularly occurring by the TECH SPECIALISTS' timecards, which report scheduled hours rather than all hours worked.

47.     At all relevant times, Defendant controlled its TECH SPECIALISTS' work schedules, duties, protocols, applications, assignments, and employment conditions.

48.     Defendant was also responsible for training and continuing its TECH

SPECIALISTS' education in their role as TECH SPECIALISTS. Indeed, all TECH SPECIALISTS are provided a CVS Rollout Operations Center Welcome Packet that reminds TECH SPECIALISTS that they "are required to adhere to CVS' policies and procedures."

49.    Defendant's TECH SPECIALISTS all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications, and phone systems.

50.    These programs, applications and systems are integral and an important part of the TECH SPECIALISTS' work, and they cannot perform their jobs without them.

51.    Defendant's TECH SPECIALISTS all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies and are subject to quality assurance reviews based on the same or similar criteria. Plaintiff has attended training and meetings with numerous other TECH SPECIALISTS on these matters.

52.    Defendant expressly instructs and trains TECH SPECIALISTS to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts and before they can begin taking and making phone calls.

53.    Defendant furthermore enforces its policy of requiring all computer networks, programs and applications to be open and ready at the commencement of a TECH SPECIALIST'S shift, and critically, before the TECH SPECIALIST clocks in, through their performance metrics and timecard approval process.

54.    More specifically, being clocked in but unavailable to take calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

55.    Defendant's scoring guidelines measure TECH SPECIALISTS' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited

to the TECH SPECIALISTS' complete and correct resolution of issues and inquiries.

56.     This performance metric necessarily requires that TECH SPECIALISTS be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of their scheduled shift begins.

57.     Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

58.     Because TECH SPECIALISTS' are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

59.     Thus, the hours reflected on the TECH SPECIALISTS' pay stubs are inaccurate and contrived by Defendant.

60.     In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their TECH SPECIALISTS' for no less than twenty-three (23) minutes per day of work performed during pre-shift time and during their lunch periods.

61.     This time could easily be recorded, accounted for and paid, but for Defendant's choice not to credit such time as time worked.

A.      **Pre-Shift Off-the-Clock Work**

62.     In addition to their regularly scheduled shifts, and as mentioned above, Defendant's TECH SPECIALISTS perform pre-shift work tasks for which they are uncompensated.

63.     Pursuant to Defendant's policies, training and direction, Defendant's TECH SPECIALISTS' are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

64.     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging twenty (20) minutes to twenty-five (25) minutes per day, and the tasks can take longer if TECH SPECIALISTS experience technical problems with the computer, software, and/or applications.

65.     Prior to the commencement of each scheduled shift, Plaintiff, as well as the other TECH SPECIALISTS, were required to complete the following tasks or tasks substantially similar to the tasks below:

       a.  Turn on their computer;
       b.  Log into Windows;
       c.  Open, load, connect, and log-into Defendant's virtual private network (VPN) by completing a multi-factor authentication process;
       d.  Log into Defendant's ROC/GEN 10 Server
       e.  Open Outlook (to read emails with work instructions and to communicate with team members);
       f.  Log into Avaya 1x phone system
       g.  Open Microsoft Teams (to communicate with team members); and
       h.  Log into Fieldglass (time keeping).

66.     The aforementioned tasks are an integral and essential aspect of the TECH SPECIALISTS' job duties and responsibilities, as TECH SPECIALISTS must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to perform their jobs.

67.     Yet, Defendant fails to compensate TECH SPECIALISTS for the computer boot up tasks.

68.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay TECH SPECIALISTS for no less than twenty (20) minutes per day of work performed in connection with the above pre-shift activities and all TECH SPECIALISTS have been damaged by virtue of Defendant's failure to pay for these compensable work tasks.

### B.    Meal-Period Off-the-Clock Work

69.    Defendant provides their TECH SPECIALISTS with one (30) minute unpaid lunch break per shift.

70.    In reality, Defendant routinely requires TECH SPECIALISTS to perform work during their unpaid lunch breaks.

71.    Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>*completely relieved*</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

72.    Defendant does not provide TECH SPECIALISTS with a bona fide meal period because its policies and procedures require TECH SPECIALISTS to return from their lunch early to perform at least part of the boot up process outlined above. Indeed, some of the systems used by TECH SPECIALISTS automatically log the user out for being idle for more than a few minutes.

73.    TECH SPECIALISTS spend approximately two (2) to (3) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when TECH SPECIALISTS are required to do a complete reboot.

74.    Defendant's management is aware that Plaintiff and other TECH SPECIALISTS perform these tasks off the clock, and could have paid TECH SPECIALISTS for this time, but did not.

### C.    Post-Shift Off-the-Clock Work

75.    Pursuant to Defendant's policies, training and direction, Defendant's TECH SPECIALISTS are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts.

76.    The shutdown and logout process requires another one (1) to two (2) minutes of off the clock work per shift.

77.    Pursuant to Defendant's policies, training and direction, Plaintiff and the other TECH SPECIALISTS are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last fielded call.

78.    Additionally, as stated above, Defendant compensates TECH SPECIALISTS based upon their scheduled shift times, as cross referenced with the time they spend logged into their phones. Thus, Defendant does not compensate TECH SPECIALISTS for all the time spent shutting down and logging out of their essential work systems.

79.    The unpaid off-the-clock work performed after each shift by Plaintiff and all other TECH SPECIALISTS directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as TECH SPECIALISTS.

### D.    Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies

80.    An example of a specific workweek where Defendant failed to pay Plaintiff all overtime due for hours worked as a TECH SPECIALIST in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Week of 10/30/22 to 11/5/2022**

- Plaintiff was paid at a rate of $17.00 per hour for the 40 regular hours Defendant credited her as having worked.

- With unpaid pre-shift, meal-period, and post-shift time of no less than twenty-three (23) minutes per shift, at five shifts per week, Plaintiff should have been paid an additional one-hundred fifteen (115) minutes at her overtime rate of $25.50 per hour during the overtime workweek.

### E.     Defendant Benefitted From the Uncompensated Off-the-Clock Work

81.     At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiff and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by TECH SPECIALISTS.

82.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their TECH SPECIALISTS.

83.     At all relevant times, Defendant was able to track the amount of time TECH SPECIALISTS spent in connection with the pre-shift, meal-period and post-shift activities.

84.     Defendant failed to do so and failed to compensate TECH SPECIALISTS for the off-the-clock work they performed.

85.     At all relevant times, TECH SPECIALISTS were non-exempt hourly employees, subject to the requirements of the FLSA.

86.     At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the TECH SPECIALISTS in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

87.     Defendant expressly trained and instructed TECH SPECIALISTS to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") the moment their shifts began.

88.     At all relevant times, Defendant's policies and practices deprived TECH SPECIALISTS of wages owed for the pre-shift, meal-period and post-shift activities they

performed.

89.     Because Defendant's TECH SPECIALISTS typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

90.     Defendant knew or should have known that the time spent by TECH SPECIALISTS in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

91.     In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

92.     Despite knowing TECH SPECIALISTS performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered or permitted it to happen.

93.     Unpaid wages related to the off-the-clock work described herein are owed to TECH SPECIALISTS at the FLSA mandated overtime premium of one and one-half their regular hourly rate because TECH SPECIALISTS regularly worked in excess of forty (40) hours in a workweek.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

94.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> **All current and former hourly-paid APPLICATION TECHNICAL SPECIALISTS ("TECH SPECIALISTS") who worked for Defendant at any time during the three years preceding the filing of this complaint through judgment and who were not paid all overtime premiums pursuant to the FLSA.**

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

95.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated TECH SPECIALISTS.

96.    Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

97.    Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

98.    Defendant assigned and/or was aware of all of the work that Plaintiff and the members of the FLSA Collective performed.

99.    As part of their regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

   a.    Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek; and

   b.    Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

100.    Defendant is aware or should have been aware that federal law requires them to pay Plaintiff and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

101.    Indeed, in light of the DOL's guidance (cited above) and the multitude of courts that have held computer boot up time is compensable, no legitimate argument can be made that

Defendant's violation of the FLSA was not willful, or at a minimum, reckless.

102.    Defendant's unlawful conduct has been widespread, repeated and consistent.

103.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).

104.    The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

105.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

106.    The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

107.    Many similarly situated current and former TECH SPECIALISTS have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

108.    Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

109.    Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

110.    Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

111.    The precise number of FLSA Collective members should be readily available from a review of Defendant's employee and payroll records.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

112.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> **All current and former hourly-paid APPLICATION TECHNICAL SPECIALISTS ("TECH SPECIALISTS") who worked for Defendant at any time during the three years preceding the filing of this complaint through judgment.**

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition as necessary.

113.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

114.    There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a.    Whether the pre-shift time that Rule 23 Nationwide Class members spend on start-up/log-in activities prior to clocking in for each shift is compensable time;

b.    Whether the time that Rule 23 Nationwide Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in is compensable time;

c.    Whether the time that the Rule 23 Nationwide Class members spend on

work activities after they clock out, such as logging out of computer systems and shutting down the computer is compensable time; and

d.      Whether Defendant's failure to pay the Rule 23 Nationwide Class members for this pre-, mid- and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

115.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

116.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

117.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

118.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

119.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

120.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

<u>**COUNT I**</u>
<u>**(29 U.S.C. § 216(b) Collective Action)**</u>
<u>**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**</u>
<u>**FAILURE TO PAY OVERTIME WAGES**</u>

121.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

122.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

123.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

124.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

125.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

126.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

127.    At all times relevant to this action, Defendant required Plaintiff and the FLSA

Collective to perform no less than twenty-two (23) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

128.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

129.    Defendant's violations of the FLSA were knowing and willful.

130.    Defendant knew or could have determined how long it takes its TECH SPECIALISTS to perform their off-the-clock work.

131.    Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

132.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Nationwide Class Action)**
**Breach of Contract**

133.    Plaintiffs realleges and incorporates all previous paragraphs herein.

134.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on Defendant's behalf.

135.    Defendant's contractual promises to pay Plaintiff and each Rule 23 Nationwide

Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiff and the Rule 23 Nationwide Class members.

136.    Moreover, Defendant reviewed and approved Plaintiff and each Rule 23 Nationwide Class member's weekly timecards.

137.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, has an hourly rate of approximately $17.00 per hour.

138.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre- and post-shift and meal period activities, described herein.

139.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

140.    To the extent there is no state law remedy available, Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week.

141.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and every other member of the Rule 23 Nationwide Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

## COUNT III
### (Rule 23 Nationwide Class Action)
### Unjust Enrichment

142.    Plaintiff re-alleges and incorporates all previous paragraphs herein except for any paragraph, sentence, or averment that alleges a contract or agreement to pay wages existed between the Plaintiff and Defendant, or the Rule 23 Nationwide Class members and Defendant.

143.    This Count is pled in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3) in the event it is determined that no employment contract or agreement existed between Plaintiff and Defendant as alleged in Count II. In other words, to the extent that this Court ultimately finds that no contract provision or agreement expressly governs the claims arising from the allegations in this Complaint, Defendant is nonetheless liable for unjustly enriching itself at Plaintiff and the Rule 23 Nationwide Class's expense.

144.    As more fully described herein, the expectation of Plaintiff and every other Rule 23 Nationwide Class member to be paid for the unpaid wages alleged in this Complaint was reasonable.

145.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

146.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

147.    Plaintiffs and every other Rule 23 Nationwide Class member relied upon

Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

148.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

149.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

150.    Defendant received and accepted the above-referenced off-the-clock work from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

151.    Plaintiffs and the Rule 23 Nationwide Class members conferred a substantial benefit upon Defendant when they performed the off-the-clock work tasks described herein.

152.    Defendant has retained the benefit of the bargain with Plaintiff.

153.    Further, upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

154.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

155.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

156.    As a direct and proximate result of Defendant's actions, and to the extent there is no valid contract or legally binding agreement, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf, on behalf of the putative FLSA Collective, and on behalf of the Rule 23 Nationwide Class requests judgment as follows:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's claims for common law breach of contract and unjust enrichment;

c.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all Collective members, and the Rule 23 Nationwide Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective and Class members of their rights by law to join and participate in this lawsuit;

d.    Designating Plaintiff as the representative of the FLSA collective action and the Rule 23 Nationwide Class, and undersigned counsel as Class/Collective counsel for the same;

e.    Designating Plaintiff as the representative of the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same

f.    Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g.    Declaring Defendant's violation of the FLSA was willful;

h.    Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the Collective, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

i.    Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

j.    Awarding other pre- and post-judgment interest to Plaintiff on these damages; and

k.     Awarding such other and further relief as this Court deems appropriate.


## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.


Dated: April 29, 2024                    Respectfully Submitted,

**LAW OFFICES OF PETER N. WASYLYK**

*s/ Peter N. Wasylyk*
Peter N. Wasylyk (RI Bar No. 3351)
1307 Chalkstone Ave.
Providence, RI 02908
Phone: (401) 831-7730
Email: pnwlaw@aol.com

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*PHV Forthcoming*)
402 W. Liberty St.
Ann Arbor, MI 48103
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez (P73413) (*PHV Forthcoming*)
126 S. Main St.
Ann Arbor, MI 48104
Phone: (734) 662-4426
Email: orod@hooperhathaway.com

*Counsel for Plaintiff and the*
*Putative Collective/Class Members*

26