**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CHRISTINA WILLINGHAM, individually, and on behalf of others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:24-cv-00167-JJM-LDA |
| CVS HEATH CORPORATION, a Delaware Corporation, | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF
LAW FOR COLLECTIVE SETTLEMENT APPROVAL**

## I.    INTRODUCTION

This is a putative wage-and-hour collective/class action that arises from claims of alleged unpaid wages related to the time spent booting up and shutting down computer systems in a remote call center setting. As explained herein, the Named Plaintiff, Christina Willingham ("Plaintiff"), and approximately 134 other individuals were employed by staffing companies to perform services for CVS Pharmacy, Inc. ("Defendant") as remote Application Tech Specialists ("Tech Specialists") between April 29, 2021 and January 8, 2025 (hereinafter, the "FLSA Collective").[1] All Defendant's Tech Specialists were paid on an hourly basis, with an average hourly rate for the FLSA Collective of $20.98 per hour.

In the present Motion for Settlement Approval, Plaintiff seeks court approval of a proposed $325,000.00 common fund Settlement Agreement and Release of Claims (the "Settlement Agreement" or "Agreement").[2] *See* **Exhibit 1**, the Agreement. For purposes of effectuating the Parties' Agreement, Defendant has stipulated to certification of the proposed FLSA Collective, and will not oppose this Motion—although it retains the right to challenge any and all assertions made in this Motion should the case fail to resolve.

In the Complaint (Docket Entry ["D.E."] 1), Plaintiff alleged that Defendant failed to pay its Tech Specialists for the time spent logging into and out of essential computer systems required to perform their job duties. However, from the onset of this case, Defendant has strongly contested Plaintiff's allegations and continues to deny the allegations. As an initial matter, Defendant maintains that it did not employ the Tech Specialists (including Plaintiff), rather they were employed by the various staffing agencies that provided them to Defendant on a temporary basis.

---

[1] Defendant has informed Plaintiff that the correct CVS entity, and the entity that executed the Settlement Agreement, is CVS Pharmacy, Inc.

[2] Capitalized terms have the same meaning as provided in the Agreement. *See*, Exhibit 1.

Additionally, Defendant denies that any off-the-clock work occurred, and to the extent there was off-the-clock work, Defendant is unwavering in the belief that Plaintiff's estimations of the off-the-clock work are wildly exaggerated. Further, Defendant asserts that because the Tech Specialists reported their own time, it did not have knowledge of any off-the-clock work, nor could it reasonably have been expected to have knowledge of the alleged off-the-clock work.

In sum, this remains a highly contested case, and should the case continue in litigation, there is a high level of uncertainty regarding whether any class or collective will ever be certified and whether the Tech Specialists are ultimately entitled to any unpaid wages.

Despite the diametrically opposed views of the claims asserted by Plaintiff, the Parties agreed to engage in substantial informal discovery, and subsequently, to submit the case to mediation with a nationally recognized wage and hour mediator. This plan to focus on an efficient and fair resolution of these disputed claims was carried out over the course of several months, with the Parties voluntarily exchanging all the necessary information to sufficiently understand the strengths and weaknesses of their respective positions on each contested issue.

To conduct the mediation, the Parties hired a highly recognized and respected wage and hour mediator, Dennis Clifford. After a full day of mediation, the Parties were able to reach an agreement that was memorialized in a memorandum of understanding that summarized many of the key terms of the Agreement. Thus, the Agreement presently before the Court for approval was reached after substantial informal discovery and with the assistance of a highly respected wage and hour mediator – underscoring the true arm's-length nature of the negotiations.

Under the Agreement, each FLSA Collective member will receive a notice containing detailed information about the settlement, the formula used to calculate the Settlement Payments, an estimated individual settlement payment, and how to obtain further information regarding the

settlement. Eligible Collective Members that choose to join this lawsuit will release their wage and hour claims against Defendant. Those who do not will retain all their rights. Because the FLSA Collective members will benefit from learning about the Agreement and their right to participate, Collective Counsel requests the Court: (1) approve the Parties' Agreement including the notice and claims process described therein; (2) dismiss the action and enter final judgment; and (3) retain jurisdiction to ensure compliance with the Agreement and any related Court orders.

For all the reasons discussed herein, Plaintiff respectfully submits that the Parties' proposed Agreement is fair and reasonable in all regards and should be approved in its entirety.[3]

## II.    PROCEDURAL HISTORY OF THE CASE

This lawsuit was filed on April 29, 2024. The Complaint alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.* and common law claims of breach of contract or (in the alternative) unjust enrichment. D.E. 1.

Shortly after Defendant was served with the Complaint, it filed an Assented Motion for Extension of Time to Respond to Plaintiff's Complaint. D.E. 6.

On June 14, 2024, Defendant filed its Answer and Affirmative Defenses. D.E. 12. In its Answer, Defendant strongly denied the allegations in Plaintiff's Complaint and, in total, asserted twenty-one (21) affirmative defenses to the claims asserted by Plaintiff. *Id.*

On July 22, 2024, the Court issued a Notice of Rule 16(b) Scheduling Conference. D.E. 13. The Court set the Scheduling Conference for August 8, 2024. *Id.*

---

[3] To the extent that the Court does not grant approval of the proposed Settlement, Defendant reserves the right to raise any argument with respect to the merits of the Plaintiff's individual, class, or collective claims or the appropriateness of the certification (or decertification) of any FLSA collective or Rule 23 class that they might have otherwise undertaken in litigation, or to make arguments that are contrary to the positions taken by the Plaintiff in this memorandum.

In advance of the Scheduling Conference, Counsel for the Parties met and conferred several times regarding various aspects of the case, including the potential for resolution. Despite the highly contested nature of the lawsuit, the Parties agreed on a practical and efficient process whereby they would stay the case, conduct informal discovery on the disputed issues, and at the conclusion of the informal discovery, submit the case to mediation with a qualified wage and hour mediator. As such, on August 1, 2024, the Parties filed a Joint Motion to Stay Pending Alternative Dispute Resolution. D.E. 14. The Court granted the Motion to Stay the following day.

On August 8, 2024, the Parties submitted a Joint Status Report Regarding Mediation that advised the Court that the Parties had confirmed the mediation for November 13, 2024 with a nationally recognized wage and hour mediator, Dennis Clifford (based in Houston, Texas).[4]

In the months that followed, the Parties conducted the necessary discovery to properly analyze the strengths, weaknesses, and value of the claims asserted by Plaintiff in the Complaint. However, the Parties encountered unexpected delays in obtaining the necessary pre-mediation discovery due, in part, to the fact that Plaintiff and the putative collective were employed through a variety of third-party staffing companies who maintained possession of their payroll records, some of which were slow to produce the requested records. Consequently, on November 20, 2024, the Parties reported to the Court that they had pushed back the mediation with Dennis Clifford until January 9, 2025. D.E. 16.

This time, as scheduled, on January 9, 2025, the Parties attended a full-day mediation that ran well into the night hours. **Exhibit 2**, Ash Decl. at ¶ 28. At the end of the day, and after a full-day of arm's length negotiations with the assistance of an esteemed wage and hour mediator, the Parties were able to reach an agreement on the monetary terms of a collective-wide settlement. *Id*.

---

[4] *See*, https://www.cliffordemploymentlaw.com/mediation/ (last accessed on April 2, 2025).

Over the course of the next three months, several disputes arose regarding the terms to be included (or not included) in the long-form settlement agreement. This required the Parties to continue their (at times contentious and disputed) arm's length negotiation of the Settlement Agreement that is presently before the Court for approval. Ash Decl. at ¶ 29.

In fact, it was not until March 17, 2025, that the Parties had completed their negotiations and obtained a fully executed Settlement Agreement. *See generally*, Exhibit 1.

### III.    FACTS RELEVANT TO THE AGREEMENT

#### A.  The Parties

As referenced above, Plaintiff and the 134 members of the FLSA Collective are hourly, remote Tech Specialists who worked for Defendant through various staffing companies in its "Roll Out Center" ("ROC") between April 29, 2021, and January 8, 2025. **Exhibit 1**, Settlement Agreement, ¶ 10(m). These individuals were likewise the 134 employees identified in Defendant's pre-mediation data productions. *Id.*; **Exhibit 2**, Ash Decl. at ¶ 21. Plaintiff alleges that "Defendant's Tech Specialists" perform typical call center job duties from their home offices across the country, and more specifically, provided over the phone technical support to "Defendant's retail locations" (pharmacies), its vendors, and its employees. D.E. 1 at ¶¶ 3, 37.

Defendant is a Rhode Island company that holds companies that, among other things, operate many pharmacies and health clinics throughout country. D.E. 1 at ¶¶ 2, 34.

#### B.  Allegations of Off-the-Clock Work

Regarding the amount of off-the-clock work alleged in the FAC, Plaintiff alleged "no less than twenty-three (23) minutes per day of work performed during pre- and post-shift time and during their lunch periods." D.E. 1, at ¶ 60. Conversely, Defendant strongly disputes these allegations (*i.e.* that there was any off-the-clock work) and maintains that even if there was some minimal off-the-clock work performed, Plaintiff's estimations are grossly overstated.

### C.  Facts Regarding the FLSA Collective and Defendant's Potential Exposure

As stated above, the FLSA Collective is comprised of approximately 134 Tech Specialists. Ash Decl. at ¶ 21. To assist in the mediation preparation, and, specifically, the creation of an accurate damages model, Plaintiff's Counsel enlisted the services of forensic accountant and damages expert, Eric Lietzow, CPA/ABV, of Desmond, Marcello & Amster.[5] With Mr. Lietzow's assistance, Collective Counsel prepared a comprehensive damage model based on the payroll records produced by Defendant during informal discovery for the FLSA Collective. Ash Decl. at ¶¶ 20-25. The data revealed the following key metrics for the FLSA Collective:

- An average hourly rate across all Tech Specialists of $20.98;
- 5,397 total workweeks; and
- 25,300 total shifts.

As a point of reference for the Parties' Agreement, under Plaintiff's damages model, assuming fourteen and a half (14.5) minutes of off-the-clock work related to the computer bootup and shutdown processes, a three-year statute of limitations, and liquidated damages, Plaintiff's damage model estimated that the total unpaid wages for both overtime and straight time damages amounts to $324,219.85. Ash Decl. at ¶ 22. More specifically, at 14.5 minutes of off-the-clock work, Plaintiff's damages model established that the FLSA overtime damages with liquidation under a three-year statute of limitations amounted to $293,653.40 and the straight time damages amounted to $30,566.45. *Id*. ¶ 23. This accounts for approximately 4,642.54 unpaid overtime hours and 1,482.46 straight time hours across the FLSA Collective.

As an additional point of reference in support of the reasonableness of the Agreement, if Plaintiff had recovered the full twenty-three (23) minutes alleged in the Complaint for the FLSA Collective, assuming a three-year statute limitations and liquidated damages, the straight time and

---

[5] *See*, https://www.dmavalue.com/team/eric-lietzow (last visited 5/20/24).

overtime damages under Plaintiff's damage model would total $519,405.76. Ash Decl. at ¶ 25. Of which, the FLSA overtime damages (including liquidation) account for $473,705.62 and straight time damages account for $45,700.14. *Id.*

In other words, if Plaintiff and the putative FLSA Collective made a 100% recovery, under Plaintiff's damage modeling, they would be entitled to $519,405.76 in unpaid wages. Accordingly, the $325,000.00 settlement represents approximately 63% of the alleged unpaid wages based on the allegations in this Complaint. Ash Decl. at ¶ 25. Under the Parties' proposed Settlement, the members of the FLSA Collective will receive more than 14.5 minutes of pay to compensate them for the alleged unpaid time spent booting up and shutting down their computers.

### D. Defendant's Defenses

Defendant asserted many defenses against Plaintiff's allegations of off-the-clock work. Among the defenses raised was, first, that Defendant did not employ Plaintiff or the FLSA Collective members – they were all properly classified as independent contractors (not subject to the protections of the FLSA). Instead, the Tech Specialists were employees of the respective staffing companies that provided them to Defendant on a temporary basis. Furthermore, Defendant argued that it cannot be held liable for off-the-clock work that it did not know, or could not have reasonably known, was occurring. *See* Ash Decl. at ¶ 19.

In regards to class and collective certification, Defendant argues, in part, that Plaintiff's claims are not suitable for class treatment because Plaintiffs recorded their own time and received timekeeping instructions from their various staffing companies, not Defendant. In other words, not all Tech Specialists received the same training on how to record their time. Ash Decl. at ¶ 19.

Still, the other issues of class and collective certification remain, and other defenses raised by Defendant provide additional obstacles to a recovery for the FLSA Collective and include that

the off-the-clock work is *de minimis* or barred by Section 4 of the Portal-to-Portal Act, 29 U.S.C. § 254. While Plaintiff takes issue with all the defenses asserted by Defendant, they nonetheless weighed on the Plaintiff's decision to settle the case.

## IV.    THE KEY TERMS OF THE SETTLEMENT AGREEMENT

### A.  The Settlement Fund

The Agreement establishes a common fund (referred to in the Agreement as the "Gross Settlement Amount") of $325,000.00. *Exh. 1*, at ¶ 10(n). The common fund covers the collective representative Service Award, Plaintiff's Counsel's Attorney's Fees and Attorney's Costs, the Settlement Administrator's costs of administering the settlement, and the payments to the Eligible Collective Members. *Id*. at ¶ 10 (p).

### B.  The Proposed FLSA Collective

The FLSA Collective is defined as "Plaintiffs, Opt-In Plaintiffs, and all persons who performed work as a third-party worker at a CVS Roll Out Center and did not sign an arbitration agreement at any time between April 29, 2021, and January 8, 2025." *Id*. at ¶ 10 (m). The individuals that meet this definition are the 134 Tech Specialists that Defendant produced payroll and time data for in advance of the mediation. *Id*.

### C.  Settlement Claims Administration

The Parties have mutually selected ILYM, Inc. ("ILYM") to serve as the Settlement Administrator. *Id*. at ¶ 10(x). The Settlement Administrator's duties are set forth in the Agreement and include: preparing and printing the Notice Package to the FLSA Collective; delivering the Notice Packages by First Class U.S. Mail with an enclosed, postage-paid return envelope to each FLSA Collective Member, emailing the Notice Packages to the FLSA Collective, calculating the *pro rata* settlement payment for each member of the FLSA Collective using the formula provided

8

in the Settlement Agreement; performing a skip-trace on any Notice Packages that are returned as undeliverable and then remailing the same if a new address is obtained; processing the Claim Forms returned and promptly contacting FLSA Collective member if there are any deficiencies in their Claim Forms; and providing reports and any information needed to Counsel for the Parties that is needed to carry out the terms of the Settlement Agreement. *Id*. at ¶ 14.

The Parties requested that ILYM provide a preliminary bid to complete the services outlined in the Settlement Agreement and ILYM estimated that the cost of completing the settlement administration duties would be approximately $5,100.68. Ash Decl. at ¶ 44.

### D. The Effective Date

"Effective Date" means "the tenth calendar day after the Court's Approval Order becomes non-appealable (i.e., 30 days after the Entry of Judgment if there is no appeal)." *Id.* ¶ 10(l).

### E. Notice and Claim Procedure

The Parties proposed Claim Form and Notice of Settlement (together referred to as the "Notice Package") is attached to the Settlement Agreement as Exhibit A (Claim Form) and Exhibit B (Notice of Settlement). *See*, Exhibit 1. As stated above, these documents will be distributed to the FLSA Collective by mail *and email*, followed by a reminder email 40 days after the initial distribution. *Id.* ¶ 14(f). The Claim Deadline is "the date seventy-five (75) days after the Notice Package is initially mailed by the Settlement Administrator to the FLSA Collective Members." *Id.* ¶ 10(e). To become an Eligible Collective Member and receive a settlement payment, the members of the FLSA Collective must return a completed claim form by the Claim Deadline. *Id.* ¶ 14(f). To be clear, a form will be considered timely regardless of whether it is returned by mail, fax, email or through an electronic signature platform such as Docusign. See *Exhibit 1*.

Collective Counsel will be responsible for filing Claim Forms (with the appropriate

9

redactions for contact information and payout amounts). *Id.* ¶ 14(i).

## F.  The Releases

In exchange for the payment provided under the Agreement, Eligible Collective Members will be subject to a limited release of all wage and hour claims. *Id*. at ¶¶ 10(u), 11. Only the Named Plaintiff (partially in exchange for the Collective Representative Service Award described below) will be subject to a General Release of all claims. *Id*. at ¶ 12. Any member of the FLSA Collective who does not opt-in to the settlement will not provide a release of *any* claims.

## G.  Allocation Formula and Tax Treatment of Payments

The Settlement Administrator will divide the Collective Settlement Amount/Net Settlement Amount by the total number of full or partial work weeks that all Settlement Collective Members worked during the relevant period based on the data produced by CVS Pharmacy, Inc. to Named Plaintiff on August 29, 2024 ("Per Work Week Amount"). The Settlement Administrator will multiply the Per Work Week Amount by the total number of full or partial work weeks that each Settlement Collective Member worked during the relevant period to arrive at an estimated Settlement Payment for each Settlement Collective Member. *Id*. at ¶ 14(e)(i).

All individual settlement awards will be paid to Eligible Collective Members on a 1099 basis, as Defendant continues to deny that it employed the Tech Specialists. *Id*. at ¶ 22.

## H.  Collective Representative Service Awards

The Agreement provides for the Named Plaintiff to receive a Collective Representative Service Award in the amount of $5,000.00 for her time, effort, and risk in bringing and prosecuting this matter, as well as for executing a General Release of claims. *Exh. 1* at ¶ 17.

## I.  Attorney Fees and Litigation Costs

Under the Agreement, subject to Court approval, Plaintiff's Counsel will receive

10

$108,322.50 (one-third (33.33%) of the $325,000.00 common settlement fund) as attorneys' fees, plus reimbursement of up to $12,000.00 in out-of-pocket costs and expenses incurred in litigating and resolving this matter. *Exh. 1* at ¶ 18. However, currently, the Attorney's Costs are $8,686.40. Exhibit 2, Ash Decl. at ¶ 45; Exhibit 3, Rodriguez Decl. at ¶ 7. Pursuant to the Parties' Settlement Agreement, any funds allocated for Attorney's Costs that are not incurred will pour into the Net Settlement Amount for the benefit of the FLSA Collective. *Exh. 1* at ¶ 10(d).

**J. The Net Settlement Amount/Collective Settlement Amount**

Under the Parties' Settlement Agreement, the 134 Tech Specialists will share a $197,879.59 Net Settlement Amount to compensate them for the time spent booting up and shutting down their computers. The Net Settlement Amount is the balance of the Gross Settlement Amount after deducting attorney fees, litigation costs, settlement administration costs, and the collective representative award.

## V.    STANDARD FOR FLSA SETTLEMENT APPROVAL

"The private settlement of FLSA claims requires the approval of either the Department of Labor or the district court." *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015), citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir.2015); *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir.1982). The Court may approve the settlement upon a finding that all parties to the action have agreed to it, and that it represents a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Singleton*, 146 F. Supp. 3d at 260, quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1355. "The court's role is to ensure that the settlement 'reflect[s] a reasonable compromise over issues ... that are actually in dispute,' rather than a pure discount on clearly-owed wages." *Curtis v. Scholarship Storage Inc.*, No. 2:14-CV-

303-NT, 2016 WL 3072247, at *2 (D. Me. May 31, 2016), quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. However, importantly, "[s]ettlement agreements enjoy great favor with the courts 'as a preferred alternative to costly, time-consuming litigation." *Fidelity & Guar. Ins. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008).

"As an initial matter, the parties' requested one-step approval process is appropriate in this case because the proposed FLSA settlement does not include any Federal Rule of Civil Procedure 23 class releases." *Herb v. Homesite Grp. Inc.*, No. 1:22-CV-11416-JEK, 2024 WL 3593918, at *2 (D. Mass. July 31, 2024). *See also*, *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219-JGD, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) (collecting cases and holding "[a] one-step approval process is appropriate in FLSA settlements that do not include proposed Federal Rule Civil Procedure 23 class releases."). This is because "[u]nlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in [in order to] be bound by any judgment." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219-JGD, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) (citation omitted); *Herb*, at *2 ("An FLSA settlement is, in other words, not binding on absent class members. Since those who do not opt in to an FLSA collective may, in turn, initiate their own lawsuits, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.").

"While the First Circuit has not articulated a test for making such a determination, courts generally consider the 'totality of the circumstances,' including '(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-

length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.'" *Herb,* at *2 (quoting *Singleton* at 260-61).

"When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996).

As explained herein, all of these factors heavily favor approval of the Parties' proposed Settlement Agreement.

## VI.    ARGUMENT

### A.  For Settlement Purposes, the Case Should be Certified as an FLSA Collective Action Because the FLSA Collective is Comprised of Similarly Situated Employees.

"The FLSA provides that an 'action to recover the liability' for minimum wage or overtime violations 'may be maintained against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.'" *Herb*, at *2 (quoting 29 U.S.C. § 216(b)).

"Unlike a class action under Federal Rule of Civil Procedure 23, collective actions under the FLSA require similarly situated employees to affirmatively opt-in and be bound by any judgment." *Dyse v. HealthAll Consulting*, 433 F. Supp. 3d 35, 38 (D. Mass. 2020) (quotation omitted). "To facilitate this opt-in mechanism, courts have developed a certification process for plaintiffs seeking to bring FLSA collective actions. Although the First Circuit has not prescribed a specific certification procedure, most courts–including most district courts in this circuit–follow a two-step approach." *Id.* at 38 (internal citations omitted).

First, the process of determining whether to grant conditional certification "entails a 'lenient' review of the pleadings, declarations, or other limited evidence, to assess whether the proposed members of a collective are similar enough to receive notice of the pending action."

13

*Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 89 (1st Cir.), *cert. denied*, 142 S. Ct. 2777 (2022); *see also*, *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013), quoting 29 U.S.C. § 216(b) ("Conditional certification of a FLSA collective action requires that the putative plaintiffs be 'similarly situated.'"). "To issue notice, the plaintiff need only show that there is 'some factual support'—as opposed to mere allegations—that the potential plaintiffs are similarly situated." *Cunha v. Avis Budget Car Rental, LLC*, 221 F. Supp. 3d 178, 182 (D. Mass. 2016).

At the second step, "after discovery is complete, the court makes a final 'similarly situated' determination." *Dyse*, 433 F. Supp. 3d at 38 (citation omitted). "Pertinent factors at this stage include: (1) any disparate factual and employment settings–for example, whether plaintiffs were employed in the same corporate department, division, and location; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Id*.

In this case, each member of the FLSA Collective was a remote worker, classified by Defendant as an independent contractor, paid on an hourly basis, utilized the same essential computer programs and computerized timekeeping system, and was allegedly subject to the same unlawful policies that resulted in off-the-clock work related to their computer bootup and shutdown activities. These commonalities weigh in favor of finding the FLSA Collective similarly situated. *See Counts v. Wayfair LLC*, No. CV 23-11706-FDS, 2024 WL 3677613, at *1 (D. Mass. Aug. 5, 2024) (granting conditional certification to remote call center workers for the time spent booting up and shutting down computer systems).

Accordingly, the Court should find the proposed FLSA Collective is comprised of individuals that are "similarly situated" under § 216(b). Accordingly, the Court should certify this case for settlement purposes only as an FLSA collective action.

**B.  The Settlement Provides a Fair and Equitable Resolution of Bona Fide Disputes and the Factors for Settlement Approval Weigh Heavily in Favor of Approval**

**1.  Plaintiff's Range of Possible Recovery**

The Parties' Settlement Agreement represents an excellent result for the FLSA Collective and is comfortably within the settlement range that supports approval. More specifically, under Plaintiff's damage modeling, the FLSA Collective will receive approximately 15 minutes of compensation for booting up/shutting down their computers each day. As explained above, this amounts to approximately 65% of the off-the-clock work alleged in the Complaint. *See*, ECF No. 1 at ¶ 60 (alleging Defendant failed to pay Tech Specialists for approximately 23 minutes). *See also*, *Bradford v. Naples Causeway Dev., LLC*, No. 2:21-CV-00015-NT, 2022 WL 3154760, at *2 (D. Me. Aug. 8, 2022) (holding "the Plaintiff's settlement amount, which is approximately 20.8% of the best-case-scenario maximum she could recover after success at trial and any appeals, is a reasonable compromise.")*; Li v. HLY Chinese Cuisine Inc.*, No. 18-CV-5077 (MMH), 2022 WL 1597302, at *4 (E.D.N.Y. Mar. 31, 2022) (approving a settlement giving the plaintiff 13.8% of the total alleged damages); *Sanchez v. DPC N.Y. Inc.*, 381 F. Supp. 3d 245, 250 (S.D.N.Y. 2019) (approving a settlement giving the plaintiff 19% of the maximum possible recovery).

Accordingly, the first factor weighs heavily in favor of settlement approval.

**2.  Extent to Which the Settlement Will Allow the Parties to Avoid the Burdens and Expenses of Litigation**

Without this settlement, the Parties would be cast into contentious litigation aimed at resolving complex legal and factual issues, including whether Defendant was a joint employer; whether it had knowledge of the off-the-clock work; whether any violations of the FLSA were willful; and the amount of off-the-clock work that occurred each day.  Additionally, while Plaintiff remains confident in all of her claims, if this case is not settled, Defendant will challenge any effort to have this case certified as a class/collective because (among other defenses) the Tech Specialists

received timekeeping training from different staffing companies. Ultimately, without this settlement, this case could be litigated for years at the cost of hundreds of thousands of dollars with the outcome very uncertain. *See*, *Bradford* at *2 ("The proposed Settlement allows the parties to avoid the significant burden and expense of trial (which would have subjected both parties to the burden of establishing their numerous claims and defenses), as well as the considerable risk to both sides that is inherent in the unpredictability of a jury trial.").

As such, the second settlement approval factor also strongly favors approval.

### 3.  The Seriousness of the Litigation Risks Faced by the Parties

As explained above, Plaintiff faces numerous challenges in making any recovery in this case. First, Plaintiff must establish that Defendant meets the criteria of a joint employer under the FLSA. If successful, Plaintiff will face numerous other obstacles in proving her case, including that Defendant had knowledge of the alleged off-the-clock work. Moreover, if Plaintiff is unable to establish that Defendant's violation of the FLSA was willful, then nearly one-third of the damages discussed herein will be eliminated by virtue of the shortened statute of limitations (two, rather than three years). Furthermore, from the onset of this case, Defendant has argued that Plaintiff's estimations regarding the amount of time needed to load and log-into her computer systems are grossly exaggerated.

In summary, the challenges that Plaintiff faces in this litigation are significant. Thus, this third factor also favors settlement approval.

### 4.  The Settlement Resulted from Arm's Length Negotiations

There is a presumption that a negotiated settlement is within the range of reasonableness "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length." *Wright v. S. New Hampshire Univ.*, 565 F. Supp. 3d 193, 206 (D.N.H. 2021), quoting *City P'ship*, 100 F.3d at 1043. *See Giotto v. US Dep't of Homeland Sec., Sec'y*, No. 20-CV-453-LM, 2025 WL

49016, at *3 (D.N.H. Jan. 8, 2025) (same).

In this case, the Parties' proposed Settlement Agreement is the result of extensive negotiations, with the assistance of a nationally recognized wage and hour mediator, and after several months of engaging in informal discovery. Accordingly, the Parties' settlement is entitled to a presumption of fairness and there is nothing in the record to overcome this presumption. Thus, the fourth factor favors settlement approval.

### 5. No Evidence of Fraud or Collusion Exists

Finally, there is no evidence of any fraud or collusion in the record. As such, the fifth and final factor also favors settlement approval. *See Wright*, 565 F. Supp. 3d at 206 (applying presumption of reasonableness where the parties negotiated "at arm's length, at times with the assistance of an experienced and neutral mediator, following a thorough investigation and mutual exchange of evidence").

### 6. Other Factors that Support Approval

An additional factor to be considered that supports the reasonableness of the settlement is the opinion of the experienced attorneys for Plaintiff and the FLSA Collective. For instance, in *Rolland v. Cellucci*, the court held that "when the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." 191 F.R.D. 3, 10 (D. Mass. 2000). Here, lead counsel for the Plaintiff and putative FLSA Collective has litigated more than 40 class and collective wage and hour cases involving call center workers. Exhibit 2, Ash Decl. at ¶ 8. Furthermore, Plaintiff's Counsel strongly supports the Parties' proposed Settlement Agreement as an outstanding outcome. *Id*. at ¶X.

## C. The Proposed Collective Representative Service Award is Reasonable and Warranted

"Because a named plaintiff is an essential ingredient of any class action, an incentive award

can be appropriate to encourage or induce an individual to participate in the suit." *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 292 F.Supp.2d 184, 189 (D.Me.2003). *In re Lupron,* 2005 WL 2006833, at *7 ("Incentive awards are recognized as serving an important function in promoting class action settlements."). Courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 400 (D.D.C.2002) (internal citations and quotations omitted).

The Parties' proposed Agreement allocates a $5,000.00 payment to Plaintiff from the common fund for a Collective Representative Service Award. *Exh.* 1 at ¶ 17. In exchange for this additional payment, Plaintiff (only) will provide Defendant with a general release of all claims. *Id.* at ¶ 12. The Court should approve this payment because it is reasonable, well-within the range of service awards in similar cases, supported by all of the relevant factors, and otherwise justified given the circumstances.

Typically, courts examine the following criteria when assessing incentive awards:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Swack v. Credit Suisse First Boston, LLC*, 2006 WL 2987053, *4, 2006 U.S. Dist. LEXIS 75470, 11–12 (D.Mass. Oct. 4, 2006) (internal quotations omitted). Each of these factors favors approval of the proposed Service Award in the Parties' Settlement Agreement.

As to the first two factors, by initiating this action as the named plaintiff, Plaintiff took on reputational risks and the risk of retaliation by future employers.

In addition to these risks, Plaintiff was required to expend a substantial amount of time

assisting Plaintiff's Counsel with the prosecution of this lawsuit for the benefit of the FLSA Collective. For the duration of this lawsuit, and even prior to the filing of this lawsuit, Plaintiff participated in conferences with her attorneys, provided vital information and documents related to the claims asserted, and remained available at all times to provide Plaintiff's Counsel with the factual information needed to obtain the Settlement Agreement.

To that end, Plaintiff has spent the past year performing these services, so the fourth factor likewise supports the requested Service Award.

Finally, without the requested Service Award, Plaintiff will have performed all of these services for the past year on behalf of her fellow co-workers without any additional compensation. Additionally, unlike the rest of the FLSA Collective, in exchange for the Service Award, Plaintiff has agreed to provide a general release of claims against Defendant. Thus, given the significant service provided to her co-workers, and the broader release of claims against Defendant, equity supports that Plaintiff should receive the requested Service Award.

Finally, the requested $5,000 Service Award is well-within the range of service awards approved by courts in this Circuit. *See*, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003) (approving $5,000 to each of the two named class representatives); *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) ("Recent cases reflect that distinction in not only employment discrimination cases but also in wage and hour cases, where recently awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher."); *Lauture* at *3 (D. Mass. June 8, 2017) ("the Court approves incentive awards of $15,000 each to the two Named Plaintiffs").

19

**D.  The Parties' Proposed Notice and Plan for Distribution and Settlement Administration are Fair, Adequate, and Reasonable**

In addition to the Agreement, the Parties extensively negotiated the incorporated proposed Notice to the FLSA Collective. *See Exhibit 1.*

Courts routinely approve FLSA settlement notices that fairly and accurately inform collective members of their legal rights and options under the settlement. *See*, *e.g.*, *Herb* at *3 (approving notice where "[t]he parties' proposed notice of settlement sufficiently summarizes this litigation and the terms of the settlement; estimates payments to potential collective members and how those payments will be issued; describes how such members can submit a claim and the deadline for doing so; and provides information about attorney's fees and costs as well as [plaintiff's] service award."); *Lauture* at *2 (approving notice that "sufficiently informs [collective members] of the allocation formula, the steps [collective members] must follow in order to participate, the consequences of non-participation, the estimated monetary amount to which they are entitled under the settlement, the scope of the release, the time [collective members] have to cash their settlement checks (120 days from the issuance of Settlement Checks), the request for attorneys' fees and costs, and other terms of the settlement."); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 61 (D. Mass. 1997) (approving notice where "the content of the notice … provided class members the information necessary to make an informed and intelligent decision about whether to participate.").

Here, the Parties proposed Notice clearly and concisely states in plain, easily understood language the factual basis of the lawsuit and the claims asserted. *See Notice, Attachment to Exh. 1.* Additionally, the Notice explains to the FLSA Collective their legal rights and options under the Agreement, the formula to calculate their estimated payment, their estimated payment based on that formula, and the release they will provide to Defendant by participating in the settlement.

20

*Id*. Furthermore, the Notice explains that any member of the FLSA Collective who does not wish to participate in the settlement or otherwise does not timely return a consent to join will not be subject to the judgment in this case, and the lawsuit and settlement will have no effect on them. *Id*.

The procedures for distributing the Notice outlined in the Agreement are designed to ensure the FLSA Collective receives the Notice in a timely fashion. For example, the FLSA Collective will be provided with a reminder notice by email 40 days after the mailing of the initial settlement Notice. *Exh. 1* at ¶ 14(f).  The FLSA Collective will also be provided with 75 days from the date the Notice is mailed, which will provide them with plenty of time to consider their options and make an informed decision. *Id.* at ¶ 10(e). Finally, the Notice also provides the FLSA Collective with the contact information for Collective Counsel and the Settlement Administrator should they have questions regarding the settlement. *See* Proposed Notice.

Overall, the Parties' proposed Notice and distribution plan is fair, reasonable, and adequate for settlement of an FLSA collective action. Accordingly, the Court should approve the Parties' proposed plan for notice and settlement administration.

**E.  The Litigation and Settlement Administration Costs Under the Proposed Agreement are Reasonable and Necessary**

Under the Parties' Agreement, Plaintiff's Counsel will be reimbursed for up to $12,000.00 in litigation expenses (Attorney's Costs) that were necessarily incurred in litigating the case and obtaining the settlement Agreement. Exh. 1 at ¶15. In the event that Attorney's Costs do not reach $12,000, the balance of that amount will be transferred to the Net Settlement Amount for the benefit of the FLSA Collective. The costs are summarized in the table below.

| Collective Counsel Joint Cost Totals | |
|---|---|
| **Expense** | **Amount** |
| Filing, and Service of Process fees | $486.40 |
| Pro Hac Vice fees | $200.00 |

21

| Damage Expert | $3,500.00 |
| Plaintiff's Share of the Mediator's Fee | $4,500.00 |
| **Total** | **$8,686.40** |

Additionally, Counsel for both Parties are experienced wage and hour attorneys and are aware of the going rate for settlement administration services. The Parties negotiated and agreed on ILYM to serve as the settlement administrator for this case based on their past experiences working with the company, and specifically, their competitive pricing and exceptional service. More specifically, ILYM has provided the Parties with a bid to perform the settlement administration duties set forth in the Settlement Agreement for $5,100.68.

Each of these expenses was reasonably incurred in litigation and in obtaining the Agreement, and thus, should be approved by the Court. *See* Ash Decl. at ¶ 45.

**F.  The Court Should Approve the Parties' Negotiated Agreement that Plaintiff's Counsel Receive as a Reasonable Attorney's Fee One-Third (33.33%) of the Common Fund Recovered for the Benefit of the FLSA Collective**

As part of the FLSA collective settlement in this case, the Parties agreed that Plaintiff would seek the Court's approval of an award of $108,322.50 in reasonable attorney fees – calculated as one-third (33.33%) of the settlement's $325,000.00 common fund. *Exh. 1* at 10(e).

In addition to requiring each member of the FLSA Collective to affirmatively opt-into the proposed settlement, the FLSA includes a mandatory attorney's fee shifting provision in favor of prevailing plaintiffs, along with recovery of litigation costs. 29 U.S.C. 216(b) ("The court in such action shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action.").

Generally, "[t]he amount of the fee … must be determined on the facts of each case," and "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckhart*, 461 U.S. 424, 429, 433 (1983). However, "[i]n an individual FLSA action where the parties settled on

the fee through negotiation, there is a greater range of reasonableness for approving attorney's fees." *Singleton* at 261 (citations omitted).

In this case, the Agreement establishes a common fund for the benefit of the FLSA Collective. The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The First Circuit has explained that the preferred method of awarding attorney fees in a common fund case is the percentage of the fund ("POF") method, rather than the lodestar method, because, among other reasons, "the POF technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995). Additionally, "using the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency." *Id*. Indeed, under the POF method, there is a strong disincentive for attorneys "to be inefficient or to drag [their] feet in pursuing settlement options." *Id*. Accordingly, the "POF method in common fund cases is the prevailing praxis and by the distinct advantages that the POF method can bring to bear in such cases."[6] *Id.*

### 1. The Parties' Settlement Agreement Provides a Reasonable Attorney's Fee Using the "Percentage of the Benefit" Approach.

As stated above, the Supreme Court has held that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee

---

[6] *See also*, *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1300 (11th Cir.1988) ("From the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model.")

*Willingham v. CVS Health Corporation* (Case No. 24-cv-00167)
Plaintiff's Unopposed Motion to Approve Settlement

from the fund as a whole." *Boeing* at 478; *see also*, *In re Thirteen Appeals* at 305 (same).

In the present case, the Parties' Settlement Agreement provides for Attorneys Fees in the amount of "one-third of the settlement's [] common fund, a percentage that is routinely approved." *Herb* at *4 (collecting cases). Indeed, "[a] one-third contingent fee is common in class action wage-and-hour cases." *O'Connor v. Dairy*, No. 2:14-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018). *See*, e.g., *Barbosa v. Publishers Circulation Fulfillment, Inc.*, No. 08 Civ. 10873 (D. Mass Nov. 25, 2009) (Dein, M.J.) (approving one-third of $1.4 million settlement fund in misclassification case ) (settlement approval motion at ECF No. 58); *see also Lapan v. Dick's Sporting Goods*, No. 13 Civ. 11390 (D. Mass. April 19, 2016) (approving one-third of $10 million settlement plus costs and expenses in wage case) (settlement approval motion at ECF No. 215); *Anderson v. HomeDelivery*, No. 11 Civ. 10313 (D. Mass. Dec. 17, 2014) (approving one third of $900,000 settlement fund in wage case) (final settlement approval motion at ECF No. 106); *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) (approving one third of $5.8 million settlement fund in wage case, and noting that one-third of the common fund fee is "consistent with wage-and-hour settlements in the neighboring jurisdiction of Massachusetts, still another market signal") (emphasis added); *Matamoros v. Starbucks*, No. 08 Civ. 10772 (D. Mass. August 16, 2013) (approving one-third of $23.5 million settlement for settlement of wage claims) (approval motions at ECF Nos. 159 and 167); *Crenshaw v. Texas Roadhouse, Inc., et al.*, No. 11 Civ. 10549 (D. Mass. September 5, 2012) (approving one-third of $5 million settlement fund for wage claims) (approval motion at ECF No. 53); *Cutter v. HealthMarkets, Inc., et al.*, No. 10 Civ. 11488 (D. Mass. Dec. 11, 2012) (approving one-third of common fund settlement in wage case) (approval motion at ECF No. 77).

In the present case, the Parties' Settlement Agreement was structured in the same fashion

as the settlement agreement that was recently approved in *Herb v. Homesite Group Inc*. In *Herb*, the Court approved an attorney fee in the amount of one-third (33.33%) of the gross settlement amount (a.k.a. the "common fund") of $725,000. *Herb*, 2024 WL 3593918, at *4.

Similarly, in *Lauture*, which was also structured as a one-step FLSA common fund settlement, the Court awarded plaintiff's counsel request for one-third of the $2,900,000.00 gross settlement fund explaining that "[a] fee award of one-third is appropriate because it mimics the market." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219, 2017 WL 5900058, at *1 (D. Mass. Nov. 28, 2017).

## 2. Although Not Required, a Lodestar Cross Check Supports the Requested Attorneys' Fees.

When the requested fee is based on a percentage of the fund, "a lodestar calculation is not required." *Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-CV-10090-WGY, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023), citing *In re Thirteen Appeals* at 307. *See also*, *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 247 (D. Mass. 2022) ("The First Circuit Court of Appeals does not require courts to cross check the percentage of the fund against the lodestar calculation to determine the reasonableness of the requested attorneys' fees.").

In fact, in *Lauture*, which was structured in the same fashion as the present Settlement Agreement, the Court explained that it "finds it unnecessary to perform a lodestar cross-check in order to determine the reasonableness of the fee award." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219, 2017 WL 5900058, at *1 (D. Mass. Nov. 28, 2017), citing *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005); *In re Thirteen Appeals*, 56 F.3d at 307.

Nevertheless, while Plaintiffs' Counsels' request for one-third of the settlement fund as attorneys' fees is reasonable in light of the significant benefit Plaintiff Counsel's efforts conferred on the FLSA Collective, a lodestar "doublecheck" or "crosscheck" further confirms the

reasonableness of the fees sought from the common fund.

Within this Circuit, courts may look at counsel's lodestar fees to doublecheck the reasonableness of a percentage-of-common-fund fee award. *See*, *e.g.*, *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998) (noting that the lodestar method can be used to "double-check" the reasonableness of a fee); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. CIV.A. 05-11148PBS, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) ("In the First Circuit, [t]he lodestar approach . . . can be a check or validation of the appropriateness of the percentage of funds fee, but is not required.").

A lodestar cross check entails dividing the total lodestar estimate into the proposed fee calculated under the percentage method. The resulting figure represents the lodestar multiplier to compare to multipliers in other cases. Here, the lodestar method eminently supports approval in this case because Plaintiff's Counsel's current hours in this matter, multiplied by reasonable hourly rates, comes out to $66,920.00. *Exhibit 2*, Ash Decl. at ¶ 39; *Exhibit 3*, Rodriguez Decl. at ¶ 6.

Importantly, the lodestar multiplier will decrease, as further discussed below, because of the anticipated additional time that Plaintiff's Counsel will continue to spend on this case through the administration of this matter and disbursement of settlement proceeds.

Based on the current lodestar of $66,920.00 (as of May 14, 2025), the requested attorney fee of $108,322.50 results in a multiplier of 1.618, which is well within the range of multipliers approved by Courts in this District. *See*, *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 246 (D. Mass. 2022) ("The typical range of the lodestar multiplier allowed by this Court is between one and 2.7."); *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (holding 3.32 multiplier is "well within the range" of multipliers approved in this Circuit); *Nilsen v. York Cnty.*, 400 F. Supp. 2d 266, 286 (D. Me. 2005) (Finding

that "in 142 cases with a class recovery ranging from $3 million to $5 million the median multiplier was 1.89"). *See also*, 4 Newberg on Class Actions § 14:7 (4th ed. 2002) ("Generally, multipliers from 1–3 are the norm.").

Although the multiplier is currently 1.618, Plaintiff's Counsel anticipates at least another ten (10) to twenty (20) hours of work in facilitating the settlement administration process. This entails fielding calls and emails from members of the FLSA Collective who have questions or require assistance with their claim forms, answering questions from ILYM, and communicating with Defense Counsel. Ash Decl. at ¶ 39.

## VII.    CONCLUSION

For all of the reasons stated herein, Plaintiff respectfully requests that the Court issue an order substantially similar to the Proposed Order attached hereto as Exhibit 4 and emailed to the Court (in Word format): (1) approving the $325,000 Settlement Agreement as fair, adequate, and reasonable, as set forth in the Settlement Agreement and Release; (2) approving the proposed Settlement Notices and direct their distribution; (3) approving service award of $5,000.00 to Named Plaintiff for her service to the collective; (4) approving Plaintiff's request for one-third of the Common Fund ($108,322.50) for attorneys' fees and litigation costs up to $12,000.00 (currently at only $8,000.00); (5) approving the Claims Administrator's fees (estimated to be just $5,100.00); (6) retaining jurisdiction to enforce the terms of the settlement Agreement; (7) dismissing this case without prejudice with leave to reinstate within thirty (30) days after the Individual Settlement Payments are issued to Participating Plaintiffs, and subsequently, if not reinstated within that time, converting the dismissal to a dismissal with prejudice.

*[Signature of Collective Counsel on following page.]*

27

Dated: May 14, 2025          Respectfully Submitted,

                              **ASH LAW, PLLC**

                              *s/ Charles R. Ash, IV*
                              Charles R. Ash, IV (P73877) (*Admitted PHV*)
                              43000 W. 9 Mile Rd. | Ste. 301 |
                              Novi, MI 48375
                              Phone: (734) 234-5583
                              cash@nationalwagelaw.com

                              **RODRIGUEZ LAW PLC**
                              Oscar A. Rodriguez (P73413) (*Admitted PHV*)
                              402 W. Liberty St.
                              Ann Arbor, MI 48103-4388
                              Phone: (734) 657-0055
                              oscar@orodlaw.com

                              *Counsel for Plaintiff and the*
                              *Putative Collective/Class Members*

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on May 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

                              *s/ Charles R. Ash, IV*